# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

**GEOFFREY E. MOSELEY,**

    Petitioner,

vs.
                                                  **CASE NO. 5:05cv115-RH/WCS**

**JAMES McDONOUGH,**[1]

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Geoffrey E. Moseley pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner challenges his conviction for lewd and lascivious conduct with a child, and the subsequent judgment as a consequence of violation of community control, in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida, case number 02-1258. Respondent filed an answer, doc. 6, and the state record, doc. 7. Petitioner filed a traverse, doc. 8. Respondent tacitly concedes that the petition is timely.

---

[1] James McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent. FED. R. CIV. P. 25(d).

After an initial review of the claims and the record, I determined that counsel must be appointed for Petitioner as to ground one and an evidentiary hearing held. Doc. 9. That order is incorporated herein by reference. An evidentiary hearing was held on September 12, 2006.

**Section 2254 Standard of Review**

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court precedent. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850. Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has a heavy burden to establish the deficient

performance prong of Strickland, by showing that "no competent counsel would have taken the action that his counsel did take." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). There are no rigid requirements, or absolute duty to investigate a particular line of defense. *Id.*

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Jackson v. United States, 976 F.2d 679, 681 (11th Cir. 1992), citing United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

**Ground One**

Petitioner entered a *nolo contendere* plea to the charge of lewd and lascivious conduct with a child. He contends in this court that his plea was invalid because he received ineffective assistance of counsel leading to the plea. He asserts that his attorney advised him to plead guilty to avoid a 30 year sentence as an habitual offender

and a prison releasee reoffender. He contends that he told her he was innocent and informed her of witnesses who would show his innocence, but she refused to investigate.

Petitioner alleged a more specific claim of ineffective assistance of counsel in his Rule 3.850 motion. There was evidence that he touched the buttocks of a juvenile, exposed himself, and rubbed his penis upon the victim's thigh. *Id.*, R. 1 (probable cause affidavit). Petitioner claimed in his Rule 3.850 motion that the offense was alleged to have been committed on April 27, 2002. Doc. 7, Ex. J, R. 5. He asserted that he was advised to plead *nolo contendere* by his lawyer when he was arraigned, and he then entered his plea and was sentenced. *Id.* Petitioner asserted he told his lawyer that he was innocent, that he had witnesses who could provide a defense. *Id.* He alleges that he told his lawyer that his girl friend, Heather Colter, would have testified that at the time the offense was supposed to have occurred, Petitioner was in the house for only a matter of minutes. *Id.* He asserted that another witness, Kellie Colter, would have testified that Petitioner woke her, asked to use the telephone, and that he immediately left the house. *Id.* He contends that this testimony would have contradicted the testimony of the victim, who said he spent "a considerable amount of time in her bedroom." *Id.* He alleged that his lawyer did not interview any witnesses and had no discovery material before giving her advice to enter a plea. *Id.*, R. 6. He states that his lawyer said that if he did not take the plea offer that day (for a 90 day jail sentence), the State "will file for habitual felony offender and prison release reoffender" and he would receive a 30 year sentence. *Id.*, R. 7. He asserted that he was pressured to take the

plea offer because he "had no confidence in counsel's ability to properly represent him."

*Id.*

The trial court denied this claim without an evidentiary hearing, finding in relevant part:

> Defendant pled no contest to Lewd & Lascivious Conduct and was sentenced to 90 days in the county jail, two years community control, and five years sex offender probation. Following an evidentiary hearing Defendant was found to have violated his community control and was sentenced to fifteen years DOC, which he unsuccessfully appealed.
>
>       \*                    \*                    \*
>
> Defendant misunderstands counsel's responsibilities when proceeding to trial with those when a plea is entered. When Defendant decided to enter a plea he gave up his right to a trial and counsel had no need to investigate his case any further. *See Rackley v. State*, 571 So. 2d 533, 534 (Fla. 1st DCA 1990). Moreover, a plea form signed by a defendant stating that his plea was freely and voluntarily entered and that defendant is pleased with counsel defeats later claims of involuntary plea or ineffective assistance of counsel. *Id.* (citing *Hagans v. State*, 492 So. 2d 753 (Fla. 1st DCA 1986).

Doc. 7, Ex. J, R. 14. Since the trial court did not hold an evidentiary hearing, this court does not have any findings of fact made by the state court as to which it must defer.

### Findings of fact from the evidentiary hearing

Petitioner testified, as did his former attorney, Kelly Roberson. While Roberson did not have an independent memory of what occurred, her memory of what she thought she would have told Petitioner is consistent with Petitioner's own testimony as to what she said. Thus, the basic facts are essentially without dispute.

Petitioner was arrested on May 4, 2002. He had a first appearance on May 5, 2002, and the Public Defender was appointed but was not then present. Petitioner did

not see his appointed lawyer, Roberson, until May 29, 2002, the day before he entered a n*olo contendere* plea.

An investigator from the Public Defender's office met with Petitioner about a week after his first appearance, but there is no evidence that the investigator provided any report to Roberson. On May 11, 2002, Petitioner wrote to Roberson and told her he was innocent. Petitioner's exhibit 1. He said: "I was not in the house long enough to do what she said." *Id*. He said he had two witnesses, Heath Colter and Kelly Colter, and provided a telephone number. *Id*. Thus, it is without dispute that Roberson knew or should have known of his assertions of innocence and that he had two potentially favorable witnesses.

Roberson testified that often she must meet with a client before receiving discovery from the State. She said that it is her practice to refrain from asking her client for his version of events until she receives discovery. She said that her clients often initially declare that they are innocent of the offense, and she prefers not to receive a detailed version of events from the client until she has the discovery and can go over it with the client. She explained that she follows this practice because if she allows a client to give his or her version of events before she has the State's evidence and the client lies to her, she would later have a difficult relationship with the client dealing with the State's evidence.

Petitioner testified, and Roberson essentially confirmed, that when they met, Roberson told Petitioner that the State offered a sentence of 90 days in jail, 2 years of community service, and 5 years of sex offender probation, in exchange for a *nolo contendere* plea. She told Petitioner that the State intended to seek an habitual

offender sentence, and also would seek a sentence as a prison releasee reoffender, if the plea offer were not accepted. She told Petitioner that if he were to be sentenced as a prison releasee reoffender, he would receive a 30 year sentence which would have to be served day for day.

Petitioner testified that he told Roberson that he was in the house for only minutes to use the telephone. He said he called his brother to tell him he was not going fishing that day. Petitioner said he did not know the details of the evidence against him at that time, particularly with respect to the timing of the offense. He said, and Roberson confirmed, that she did not tell him the details of the allegations against him. He admitted, however, that he and she had the police report and the arrest affidavit.

Petitioner said that he felt that Roberson was rushing him. He knew she did not then have any discovery from the state, and Roberson confirmed that she did not yet have any discovery. She apparently did not obtain discovery until after the plea was entered.

Roberson also confirmed that a plea offer was a "one shot" opportunity, and she explained that to Petitioner. She said that it often happens that she has a client who professes innocence but takes the plea offer. She said it is her practice to tell her client that he or she knows the facts, that she does not, and to advise of risks of going to trial. It was her practice to tell the client that if there was any chance of being convicted, to take the plea offer. She said she could have asked to hold the plea offer open until she got discovery.

The plea colloquy dated May 30, 2002, is minimal. At the beginning, Roberson set forth the details of the plea offer and said to Petitioner, "And if this is what you want

to do, sir, you need to sign there." D. Ex. 1, p. 3. The court said that if Petitioner wanted to accept the plea offer and enter a plea, he would be placed under oath and the assistant state attorney would ask him questions. *Id*. Petitioner was placed under oath. *Id*. Petitioner said he wished to enter a plea. *Id*., p. 4. He said he had had a chance to speak with Roberson and was satisfied with her services. *Id*. He said he entered the plea freely, without coercion. *Id*., p. 5.

The discovery that Roberson received was placed into evidence. D. Ex. 2. It will be assumed that Roberson did not show this discovery to Petitioner before the plea was entered. There is some ambiguity about this, however, as the exhibit has a stamp labeled "Discovery" dated May 23, 2002. *Id*.

Included in this discovery is the Panama City Police offense incident report dated April 27, 2002, which appears to be the police report that Petitioner reviewed when he met with Roberson before the plea was entered. That document reported that the victim said that at 2:30 a.m., Petitioner came into her room

> uninvited, knowing her age, and undressed himself in her room by her bed. He performed lewd and lascivious acts on her after climbing into her bed and getting under her sheets. He left shortly there after [sic].

D. Ex. 2, p. 7.[2]

The probable cause affidavit is also attached. *Id*., p. 84. It alleged that Petitioner attempted to persuade a juvenile victim to have sexual intercourse with him, took off his pants, exposed his penis, and rubbed his penis on the victim's thigh. *Id*.

---

[2] The page numbers are handwritten in the lower right hand corner of this exhibit.

A narrative prepared by Detective Andrea Braxton of the Panama City Police Department follows this incident report.  *Id.*, pp. 9-11.  Inspector Braxton states that Kellie Colter and Joyce Colter were at the residence with the victim.  *Id.*, p. 9.  Also living on the property but not in the house were Petitioner and his girlfriend, Kellie Colter's older sister, who was pregnant.  *Id.*  They lived in a garage apartment and had to come into the house to use the bathroom because the apartment had no running water.  *Id.*  The back door was left unlocked at night, said the victim, so they could come into the house to use the bathroom.  *Id.*

The victim said she awoke at about 2:00 a.m. to find Petitioner standing over her trying to wake her up.  *Id.*  She said Petitioner took off his clothing and tried to have sexual intercourse with her.  *Id.*  She said she continuously told Petitioner she was only 15 years old and told him to leave.  *Id.*  Petitioner touched her buttocks and the upper part of her vagina.  *Id.*, pp. 9-10.

The investigator said that Kellie Colter said she was asleep that night and was awakened by Petitioner, asking if he could use the telephone.  *Id.*, p. 10.  She said she told him no and to go away.  *Id.*  Kellie Colter said she then awoke her parents and asked them to sleep on the couch to make sure Petitioner did not come back that night.  *Id.*

Joyce Colter, the mother of Kellie Colter, said that she sat on the couch the rest of the night to be sure that Petitioner did not return.  *Id.*  She said that Petitioner passed a telephone in the kitchen when he came into the house.  *Id.*

**Legal analysis**

While it is a potentially unsound practice for a defense attorney not to have the available discovery in hand before advising a defendant to accept a plea offer,[3] it is undisputed here that the plea offer was very generous, given the possibility of a 30 year sentence. A ninety day jail sentence followed by a longer period of supervision was plainly a good offer unless Petitioner was innocent of the victim's allegations and had a good chance of prevailing at trial. There is no evidence at all, however, that Petitioner did not know that he had a right to a trial, or that he did not know that there was a risk of a 30 year sentence had he rejected the plea offer. The risk of trial was better known to Petitioner than counsel when the plea was entered because he had knowledge of what happened that night. Therefore, under the circumstances presented here, it was not attorney error for counsel to strongly advise Petitioner to take the plea offer even though she did not yet have the discovery.

Moreover, even if it were attorney error not to try to postpone the plea until the discovery had been reviewed, prejudice to the outcome has not been shown. Petitioner had a chance to bring his potential witnesses to the evidentiary hearing but did not. Thus, Petitioner has come forward with no evidence except his own conclusory statements as to what his alleged witnesses would have said at a trial. A defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state

---

[3] "It is true that 'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . .' *however, counsel must still make an independent examination of the facts and circumstances and offer an informed opinion to the accused as to the best course to follow. Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir.1984)." Agan v. Singletary, 12 F.3d 1012, 1017-18 (11th Cir.1994) (emphasis added).

Case No. 5:05cv115-RH/WCS

a claim of ineffective assistance of counsel. See <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636-37 (11th Cir.1985), *cert. denied*, 479 U.S. 918 (1986); <u>Bolder v. Armontrout</u>, 921 F.2d 1359, 1363-1364 (8th Cir.1990), *cert. denied*, 502 U.S. 850 (1991); <u>United States v. Vargas</u>, 920 F.2d 167, 169-170 (2d Cir.1990), *cert. denied*, 502 U.S. 826 (1991).

Moreover, if Petitioner and counsel had reviewed this discovery before the plea was entered, they would have seen that one of the witnesses, Kellie Colter, would have testified that Petitioner *awoke* her to ask to use the telephone. Thus, she had no ability to testify as to how long Petitioner had been in the house before she was awakened. Further, her mother would have testified that there was a telephone in the kitchen, and that Petitioner passed by the telephone as he entered the house. If he had access to the house to use the bathroom at night, he probably could have used the telephone without waking anyone or asking for permission. Additionally, Petitioner's testimony, that he entered the house only to make a telephone call to his brother to tell him he was not going fishing that day, makes little sense. It was about 2:00 a.m. when he entered the house. Petitioner has not shown that had he and counsel reviewed this discovery, he would have rejected the plea offer and insisted upon going to trial. Ground one, therefore, is without merit.

**Ground Two**

Petitioner contends in ground two that he was denied due process with respect to the revocation of community release because he was not given notice of the new charges or an opportunity to prepare. Petitioner alleges that on December 30, 2002, an affidavit was filed alleging a violation of community control. He states that he was arrested on January 4, 2003, and on February 21, 2003, the revocation hearing was

Case No. 5:05cv115-RH/WCS

scheduled for April 14, 2003.  He then alleges that he appeared before the court on April 4, 2003, for the revocation hearing, ten days early, and at that time the state amended its petition to allege additional new law violations.  Petitioner contends that he did not have adequate time to prepare as to the new charges.

Petitioner was represented by counsel, Walter Smith, at the revocation hearing on April 4, 2003.  Doc. 7, Ex. B, R. 75.  The prosecutor, Ashley Adams, told the court at the outset of the hearing that an amended affidavit of violation was in the file.  *Id*., R. 78.  The court asked Petitioner's attorney, Smith, if he had received a copy and he said "Yes, sir."  *Id.*  Petitioner's attorney made no objection to the timing of the amendment, and he made no argument that the amendment had caught him by surprise or that he needed more time to prepare.  *Id*., R. 78-115.  In particular, Petitioner's attorney made no federal due process claim at all.

Respondent argues that since Petitioner waived any federal due process argument at the revocation hearing, he cannot now make such a claim in a collateral proceeding.  This is just another way of saying that Petitioner failed to present the federal claim in state court.  "Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)." O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard).

If a claim was not fairly presented but is procedurally barred from further state court review, Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).  Petitioner has not shown cause for his default of this federal due process claim or actual prejudice to the outcome.  Petitioner cannot argue ineffective assistance of counsel as cause for the default because he has not exhausted state court remedies as to that claim.  Edwards v. Carpenter, 529 U.S. 446, 451-453, 120 S.Ct. 1587, 1591-92, 146 L.Ed.2d 518 (2000).  Consequently, this court cannot reach the merits of ground two.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Geoffrey E. Moseley challenging challenges his conviction for lewd and lascivious conduct with a child, and the subsequent judgment as a consequence of violation of community control, in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida, case number 02-1258, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on September 27, 2006.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**